Filed 8/18/23  State Dept. of State Hsopitals v. R.C. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE DEPARTMENT OF STATE HOSPITALS, | F085696 |
| Petitioner and Respondent, | (Super. Ct. No. 22CEPR01444) |
| v. | |
| R.C., | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Brian M. Arax, Judge.

Linda J. Zachritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Petitioner and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Franson, J. and DeSantos, J.

R.C. is a patient civilly committed under the Sexually Violent Predators Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.), committed at the State Department of State Hospitals (DSH) at Coalinga.  DSH petitioned for an order compelling involuntary medical treatment of R.C. for a "severe left ventricular systolic dysfunction."  The petition was granted and R.C. appeals.

R.C.'s counsel has outlined the relevant facts pursuant to *Conservatorship of Ben C.* (2007) 40 Cal.4th 529.  R.C. was notified of the nature of the brief filed by his appellate counsel and afforded an opportunity to file a supplemental brief.  He submitted four documents in this case since that time.  In those documents he:  (1) contends doctors unlawfully implanted an experimental device in his body which allows remote control of his thoughts and actions, but he is nevertheless sane; (2) claims that no attorney represents him and asks what recourse is available; (3) claims his attorney did not contact him, that he was muted at the hearing on the petition, and that "[t]he ugly one" who controls him limited his mental capacity to respond in this case; and (4) contends that his attorney has not contacted him, that the incompetency proceedings were procedurally flawed because he was muted during the hearing, and he was not adjudged incompetent and therefore retains his right to refuse medical care.  The People filed no responsive brief.  Finding that no reasonably arguable factual or legal issues exist, we dismiss R.C.'s appeal.

## BACKGROUND

On May 8, 2007, R.C. was committed to DSH Coalinga pursuant to Welfare and Institutions Code section 6604.

On December 6, 2022, DSH filed a petition[1] to compel R.C. to submit to involuntary medical treatment for severe left ventricular systolic dysfunction by

---

[1]     In support of the petition, DSH filed declarations by a staff psychiatrist and staff surgeon at DSH Coalinga.  All of the factual allegations made in the petition were supported by the declarations attached to the petition.

2.

placement of a Bivent Implantable Cardioverter Defibrillator (ICD) and other treatment. The petition alleges that "[t]here are no medical alternatives to conducting this treatment. Without the treatment, [R.C.] will continue to be at risk of progression to advanced congestive heart failure which could result in his death." The petition further alleges that an order compelling the treatment is necessary because defendant's diagnosed mental health condition—schizophrenia and paraphilic disorder—which has caused symptoms including "paranoid and somatic bizarre delusions, hallucinations, [and] disorganized behavior," resulted in his inability to understand the nature of and risks involved in his medical condition. Defendant believes he is healthy and "instead focuses on his fixed delusion of … 'a wire in his back.' His thought process and decision making are influenced by his psychiatric symptomology, and he is not able rationally [to] make decisions related to his mental or physical health."

On January 18, 2023, the trial court conducted a hearing on the petition. The parties agreed that the court could consider the declarations of the staff psychiatrist and staff surgeon filed in support of the petition without taking testimony. R.C.'s counsel explained that R.C. believes he is healthy, and his only medical problems come from a "wire and chip in his back that he needs to have removed …." R.C. was willing to consent to medical procedures necessary to treat "immediate and life threatening" conditions, but he did not believe that implantation of the ICD and other treatment sought fell into that category. Counsel for DSH noted that the declarations submitted reflected that R.C. had "several significant heart conditions" and implantation of the ICD was necessary support "in order to continue him having this healthy functioning life."

The trial court concluded that defendant had a heart condition that required treatment and, due to his serious mental health condition, he was unable to make medical decisions in his own best interest. He could not "evaluate the risks and the benefits of the treatment proposed, nor c[ould] he adequately therefore provide an informed consent or denial to that treatment." Finally, the court found that there was no less-intrusive manner

3.

to provide effective treatment for defendant's medical condition and implantation of the ICD and postimplantation treatment were therefore necessary.  Based on those findings, the court granted the petition.

On January 25, 2023, defendant filed a notice of appeal.

### DISCUSSION

As noted, R.C.'s counsel has filed a brief identifying no reasonably arguable issues on appeal.  We have exercised our discretion to proceed with this appeal and review the record consistent with the standards set forth in *Ben C.* and *People v. Serrano* (2012) 211 Cal.App.4th 496, 503–504.  As the court in *Ben C.* described in the context of a conservatorship appeal, when appointed appellate counsel finds no arguable issues, "counsel need not and should not file a motion to withdraw.  Instead, counsel should (1) inform the court he or she has found no arguable issues to be pursued on appeal; and (2) file a brief setting out the applicable facts and the law.  Such a brief will provide an adequate basis for the court to dismiss the appeal on its own motion."  (*Conservatorship of Ben C.*, *supra*, 40 Cal.4th at p. 544.)

Here, R.C.'s counsel has filed a brief outlining the facts and procedural history and advising R.C. of his right to file a supplemental brief.  We also informed R.C. of his right to file a supplemental brief.  As noted above, R.C. submitted four documents after we informed him of his right to file a supplemental brief.  We briefly summarize the issues he has raised and explain why none provide a basis for relief in this case.

First, defendant contends that he was implanted with a "fixation device" but contends that he is sane and presented evidence to prove his sanity.  A competent adult has a common law and constitutional right to refuse medical treatment.  (*In re Qawi* (2004) 32 Cal.4th 1, 14.)  An involuntarily committed patient may be forcibly treated for medical conditions if a court has determined that he is not competent to refuse treatment. (*Ibid.*; *In re Calhoun* (2004) 121 Cal.App.4th 1315, 1354.)  The superior court shall determine competence to refuse treatment by clear and convincing evidence, "so clear as

4.

to leave no substantial doubt, [and] sufficiently strong to command the unhesitating assent of every reasonable mind." (*Conservatorship of Waltz* (1986) 180 Cal.App.3d 722, 733, fn. 14.)

After independent review of the record on this issue, we find that no reasonably arguable factual or legal basis to challenge the sufficiency of the evidence exists. The DSH Coalinga staff psychiatrist stated in his declaration that defendant had been diagnosed with schizophrenia and paraphilic disorder. His symptoms include paranoia, delusions, hallucinations, and disorganized behavior. "His delusions include the belief that he was being controlled by the mafia and the government, he was equipped with a battery pack that knocks him out, and that he had an implant in his teeth that controlled his brain." R.C. denies having medical issues and instead focuses on "his fixed delusion of a removal of 'a wire in his back.' His thought process and decision making are influenced by his psychiatric symptomology, and he is not able rationally [to] make decisions related to his mental or physical health."

Sufficient evidence supported the trial court's conclusion that R.C. was not competent to refuse treatment.

Second, R.C. contends that no attorney represents him and his appointed attorney failed to return his calls. The record before us confirms that an attorney was appointed on behalf of R.C. and filed a *Ben C.* brief on his behalf. R.C.'s attorney also states in her declaration that she communicated with R.C. regarding her findings about the case and sent a letter advising R.C. of the nature of the brief filed in this case and R.C.'s option to file a supplemental brief. Defendant's second letter identifies no basis for relief.

Third, R.C. again contends that his appellate attorney had not communicated with him, he was placed on mute during the hearing on the petition, and he was unable to "use [his] full potential of mind" because "[t]he ugly one" deliberately "jolts [him] and blocks [his] own thoughts." We have addressed his first contention and can offer no relief as to his third contention. As to R.C.'s second contention, R.C.'s trial attorney represented

5.

that R.C. did "not wish to testify." R.C. does not dispute that account in his response. Further, the record does not indicate that R.C. was muted at the hearing on the petition, but the record also does not indicate R.C. spoke at the hearing. Even assuming R.C. was muted, no harm resulted. (See *In re James F.* (2008) 42 Cal.4th 901, 916–918.) At the hearing, R.C.'s trial attorney represented that she had communicated with R.C. and R.C. asked that the attorney make a statement on R.C.'s behalf. R.C.'s trial attorney relayed that R.C. denied having a heart condition and believed that he has a "wire in his back or a computer chip" that needed to be removed. R.C.'s trial attorney also conveyed that R.C. would consent to emergency medical treatment for any immediate and life-threatening medical issue, but he does not believe that he has a heart condition that requires treatment. That position is consistent with R.C.'s position in his letters. Because R.C. has identified no argument that he would have presented to the trial court that was not already presented by his trial attorney, any error in muting him was harmless beyond a reasonable doubt. Accordingly, R.C.'s third letter and the record before the court provide no basis for relief.

Fourth, R.C. contends again that he was muted at the hearing on the petition and contends for the first time that he was not judged incompetent to make his own medical decisions. We have already addressed the issue of R.C. potentially having been muted at the hearing on the petition. As to his second contention, he is mistaken. As described above, the trial court considered the evidence presented by the staff psychiatrist and staff surgeon and concluded that defendant had a mental condition that prevented him from understanding the nature of his medical issues. The court further concluded that R.C. required the proposed medical care and that no less invasive treatments were sufficient. Clear and convincing evidence supported the court's conclusions. (*In re Qawi*, *supra*, 32 Cal.4th at p. 14; *In re Calhoun*, *supra*, 121 Cal.App.4th at p. 1354; *Conservatorship of Waltz*, *supra*, 180 Cal.App.3d at p. 733, fn. 14.) On that basis, the trial court appropriately ordered treatment. R.C.'s fourth letter provides no basis for relief.

## DISPOSITION

R.C.'s appeal is dismissed.